UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Thomas E. Ohlson,

     Plaintiff,

v.

Bradley D. Slawson, Sr.,

     Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 11-2104

_____

     Richard T. Wylie, Counsel for Plaintiff.

     Martin J. Costello and Katrina E. Joseph, Hughes & Costello, Counsel for
Defendant.

_____

## I.     Background

     Plaintiff is a former Business Agent and employee of the Teamsters Local

No. 120 ("Local 120" or "Union"), which is affiliated with the International

Brotherhood of Teamsters ("IBT").  He began working for the Local 120 in 1997

when he was elected to the position of Business Agent.  Prior to that time,

Plaintiff was a truck driver for Roadway Express, and was a rank and file

member of the Local 120.

1

Defendant has been a union member since 1970, and served as union steward from 1970 through 1983 at the Teamsters Local No. 544.  In December 1983, he was elected to the position of Business Agent and Vice President.  In 2000, after Local 544 was merged into Local 120, Defendant was appointed to the position of Recording Secretary.  Currently, Defendant is the elected principal officer and Secretary-Treasurer of Local 120.

Local 120 is governed by the IBT Constitution and the Local 120's Bylaws. (Joseph Aff., Ohlson Dep. Exs. 2, 4.)  The Union is governed by an Executive Board, comprised of the President, Vice-President, Secretary-Treasurer, Recording Secretary and three Trustees.  (Id., Ohlson Dep. Ex. 4 at § 6.)  All Executive Board members and Business Agents are elected by a majority vote of Local 120 members.  (Id. at § 17(A).)

Pursuant to the Bylaws, the Secretary-Treasurer is the principal officer, whose duties include the supervision, conduct and control of the Union's business, officers, representatives and employees.  (Id. at § 8 (A).)  The Bylaws further provide the manner in which Officers and Business Agents may be removed from office:

> In order to remove an officer or Business Agent from office, charges must
> be preferred against him in writing and such charges must be proven.
> Charges may be for violation of his obligation or some act in connection
> with the organization, which would render him unfit as an officer or
> Business Agent.

(Id. § 13 (B).)

Defendant asserts that Local 120, and him personally, received many complaints about Plaintiff's job performance as a Business Agent.  (Id. Ex. B (Slawson Dep. at 41-42).)  For example, it was reported to Defendant that Plaintiff did not return phone calls and was otherwise derelict in handling the affairs of those members included within his assigned bargaining units.  (Id.; Ohlson Dep. Ex. 13C; Slawson Dep. Ex. S.)

Despite the complaints, Defendant asserts he tried to work with Plaintiff to address his job performance.  He states that he talked with Plaintiff many times, went to some of his negotiations, and encouraged him to attend Business Agent training.  (Id. Ex. B (Slawson Dep. at 159).)  Defendant asserts that Plaintiff's performance did not improve.

Meanwhile, Local 120 began to experience financial difficulties.  Since 2008, 4,000 Union members had been laid off due to the recession.  (Id. at 148.)  As a result of these lay-offs, Local 120 experienced a monthly reduction in dues

totaling $200,000.  (Id. at 149-50.)   To address these losses, Local 120's Executive

Board implemented various strategies, including dues increases, wage freezes for

all Union officers and Business Agents, reducing Union business travel and

otherwise reducing costs for Union events.  (Id. at 150.)   In addition, Union staff

office positions and four Business Agent positions were eliminated.  (Id. at 152.)

Defendant asserts that in 2011, additional cost-cutting measures needed to

be taken, and he decided that an additional Business Agent position needed to be

eliminated.  (Id.)  Defendant and the other Union officers decided that Plaintiff

would be laid off from his paid position, pending an economic improvement at

Local 120.  (Id. at 131-32, 178.)   Plaintiff was thereafter laid off, effective May 5,

2011.  (Id., Ohlson Dep. Ex. 6.)  During the time he was laid-off, Plaintiff retained

his elected Business Agent position, and all of its privileges and obligations, such

as being a delegate to the 2011 IBT Convention and attending Executive Board

meetings and General Membership meetings.  He was, however, relieved of his

job duties, which included negotiations and contract enforcement.  Plaintiff also

retained his seniority position at Roadway Express and had the right to return to

work at Roadway Express during his lay-off.  (Id., Ohlson Dep. Ex. 24.)

In response to his lay-off, Plaintiff brought charges against the Union.  (Id.,

Ex. A (Ohlson Dep. at 58-59).)  Thereafter, on July 7, 2011, Plaintiff was recalled to his full-time position as Business Agent and was also "made whole for all back pay, benefits, and other compensation due and owing [Plaintiff], retroactively to the date of the layoff." (Id., Ohlson Dep. Ex. 9.)

When the next union elections were held in November and December 2011, Plaintiff did not seek re-election as a Business Agent; instead he challenged the incumbent President and lost.  (Id. Ex. B (Slawson Dep. at 88-89); Ex. A (Ohlson Dep. at 66).)  Because he no longer held an elected position with Local 120, his employment with Local 120 terminated effective December 31, 2011.

This action was filed in Minnesota state court on June 29, 2011; which was after Plaintiff brought charges against the Union, but before his recall to employment.  In his original complaint, Plaintiff asserted that Defendant interfered with his contract of employment with Local 120 and that Defendant intentionally inflicted emotional distress upon Plaintiff.  Plaintiff later amended his complaint, adding a claim that Defendant violated Plaintiff's rights under the Labor Management Reporting & Disclosure Act ("LMRDA"), 29 U.S.C. § 401, et seq.

Defendant now moves the Court for summary judgment as to all claims. In response, Plaintiff has indicated that he does not contest dismissal of Count II - intentional infliction of emotional distress - but does object to the motion for summary judgment with respect to the remaining claims of interference with contract and violation of the LMRDA.

## II.     Standard for Summary Judgment

Under Rule 56(b) of the Federal Rules of Civil Procedure, "a party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim."  Fed. R. Civ. P. 56(b)(2008).  Furthermore, "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleadings; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2).

## III.   Analysis

### A.   Tortious Interference with Contract

Generally, union agents will not be held personally liable when they act in

their official capacities for the union.  Arnold v. Air Midwest, Inc., 100 F.3d 857,

861 (10th Cir. 1996) (citing Atkinson v. Sinclair Refining Co., 370 U.S. 238, 249

(1962)).  When Congress passed § 301 of the Labor Management Act, "it declared

its view that only the union was to be made to respond for union wrongs, and

that the union members were not to be subject to levy."  Atkinson, 370 U.S. at

248.  "This policy cannot be evaded or truncated by the simple device of suing

union agents or members, whether in contract or tort, or both, in a separate count

or in a separate action for damages for violation of a collective bargaining

contract for which damages the union itself is liable."  Id. at 249.

Many courts, relying on Atkinson, have dismissed state law claims against

individuals acting in their capacity as a union agent.  Arnold, 100 F.3d at 862

(quoting Montplaisir v. Leighton, 875 F.2d 1, 4 (1st Cir. 1989) ("[w]ith

monotonous regularity, court after court has cited Atkinson to foreclose state-law

claims, however inventively cloaked, against individuals acting as union

7

representatives within the ambit of the collective bargaining process."). <u>See</u> <u>also</u>, <u>Wolfson v. Am. Airlines, Inc.</u>, 170 F. Supp.2d 87, 95 (D. Mass. 2001) (dismissing state tort claim of tortious interference with contract against union president based on immunity); <u>Columbia Park Bus. Ctr. Corp. v. Perez</u>, Civ. No. 01-1757 (RHK/JMM), 2002 WL 570666, at *4 (D. Minn. Apr. 12, 2002) (dismissing claims seeking money damages against union agents where plaintiff failed to reference any facts that defendants acted outside the scope of their authority as union agents).  Defendant argues that as he was acting in his official capacity when he allegedly interfered with Plaintiff's employment contract, he cannot be held liable for such conduct, and the tortious interference with contract claim must be dismissed.

In addition, pursuant to Minnesota law, "the general rule is that one cannot interfere with its own contract."  <u>Nordling v. N.S.P. Co.</u>, 478 N.W.2d 498, 507 (Minn. 1991).  Defendant argues that as he was acting in his capacity as a union officer, he was not a stranger to that contract, and cannot be held liable under the theory of tortious interference.  <u>Bouten v. Richard Miller Homes, Inc.</u>, 321 N.W.2d 895 (Minn. 1982) (finding that "[w]ith respect to the tort of interference with contractual relations, a breach by the defendant of his own

8

contract with the plaintiff is not actionable.")

As Plaintiff points out, however, Minnesota law provides that liability may attach where there is evidence that a company officer or agent is motivated by malice and bad faith, personal ill-will, spite, hostility or a deliberate intent to harm the plaintiff.  Nordling, 478 N.W.2d at 506.  Plaintiff argues that there are fact questions as to whether Defendant was motivated by malice or ill-will towards Plaintiff, therefore summary judgment on this claim is not appropriate.

In support, Plaintiff has submitted a declaration in which he states that on numerous occasions, Defendant yelled and swore at Plaintiff, and otherwise treated him in an ill manner.  For example, Plaintiff states that in 2002, while he was on medical leave recovering from a traumatic brain surgery, Defendant ordered Plaintiff to travel 235 miles in a blizzard to attend a union hall meeting. When Plaintiff arrived at the meeting, Defendant immediately sent him home. (Ohlson Decl. ¶ 6.)  Plaintiff asserts that in 2003, Defendant posted a notice to all Business Agents to attend a union function.  On the notice, Defendant wrote and highlighted "Tom: You Are Required to Be There, Per My Instructions.  Brad Sr." (Id. ¶ 7.)  Plaintiff believes the added notation was meant to humiliate and embarrass Plaintiff.  (Id.)

In February 2004, Defendant yelled at Plaintiff for not settling a grievance, and stated that he was tired of "f***ing" with Plaintiff and that Plaintiff was in the wrong "f***ing" business and that Defendant should send Plaintiff back to the truck.  (<u>Id.</u> ¶ 8.)  A month later, while Plaintiff was on vacation, Plaintiff claims that Defendant left him several angry voicemail messages as Plaintiff was not returning Defendant's phone calls.  (<u>Id.</u> ¶ 9.)

Plaintiff then jumps to 2011, and details other instances in which Defendant used profanity and berated Plaintiff's performance.  (<u>Id.</u> ¶¶ 10, 11.) He claims that the Union Recording Secretary, Byran Radamacher, told Plaintiff that Defendant did not like him and never would.  (<u>Id.</u> ¶ 12.)  In April 2011, matters between the parties heated up when Defendant believed Plaintiff was responsible for a company decertifying the Union.  (<u>Id.</u> ¶ 13.)  Shortly thereafter, on April 26, 2011, Defendant informed Plaintiff that he was going to be laid off. (<u>Id.</u> ¶ 14; Ex. H.)  Plaintiff nonetheless worked the following week, and requested to be paid for such work.  (<u>Id.</u> ¶ 17.)  The following week, Plaintiff received another letter from Defendant, informing him that he would be laid off effective May 5, 2011, and that he would be paid up to May 5, 2011.  (<u>Id.</u> Ex. J.)  Plaintiff claims that after he was reinstated to his job in July 2011, Defendant denied his

sick leave requests for specious reasons.  (<u>Id.</u> Ex. R.)

Plaintiff asserts that an elected Business Agent can only be removed from his position for charges brought of which he is given notice and which are proved at a trial.  (<u>Id.</u> Exs. K (IBT Constitution) and L (Local 120 Bylaws).) Because no charges were ever brought against Plaintiff, he argues his lay off was wrongful, and is further evidence of malice or ill-will.

Plaintiff further challenges Defendant's suggestion that he was laid off for economic reasons as Defendant allegedly hired several replacement business agents to replace those retiring, including one just prior to Plaintiff's lay off. (Ohlson Decl. ¶ 24.)  If money were a problem, Plaintiff argues, Defendant need not have laid off Plaintiff from his position, he simply could have chosen not to replace one of the retiring business agents.

Plaintiff also challenges any suggestion that he was laid off for poor job performance.  Job performance was not mentioned in the two letters sent to him regarding his lay off, and he was told by another Business Agent that Defendant told him that Plaintiff was "a good business agent."  (Decl. of John Schwartz.)

11

Plaintiff thus argues that taking these circumstances under consideration - use of profanity and other unreasonable conduct toward Plaintiff and wrongful lay off - there is a question of fact whether Defendant acted with actual malice or ill will when he decided to lay off Plaintiff in May 2011.

"A bad motive is sometimes referred to as malice."  Nordling, 478 N.W.2d at 506.  "[W]hen motive or malice becomes relevant on the issue of improper interference, [] this malice must be actual malice."  Id.  In the immunity context, actual malice is defined as "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right."  Kari v. City of Maplewood, 582 N.W.2d 921, 924 (Minn. 1990).

The Court has reviewed the record and finds that Plaintiff has failed to demonstrate the existence of genuine issues of fact as to whether the Defendant acted with actual malice - that is without legal justification or excuse or willfully violated Plaintiff's known rights.  Viewing the allegations in the light most favorable to Plaintiff, his allegations demonstrate that Defendant addressed Plaintiff using profane and otherwise harsh language while addressing job performance issues.  The record further demonstrates that Plaintiff was not discharged or otherwise disciplined by Defendant; rather he was laid-off from his

employment, but retained his position as elected business agent.  (Costello Aff.,

Ohlson Dep. Ex. 7 (A).)   He was thereafter recalled, and made whole.  (Id.

Ohlson Dep. Ex. 7(B).)

Plaintiff admitted at his deposition that as Secretary-Treasurer, Defendant

had the duty to address the job performance of Business Agents and that

Defendant was acting in his official capacity when he engaged in the conduct that

forms the basis of his interference claim.  (Joseph Aff., Ex. A (Ohlson Dep. at 158

"Q: Now, when the Defendant did these things to you, was he acting as []

secretary treasurer of Local 120.  A: Yes.  Q: So he was acting in his official

capacity as secretary treasurer of Local 120, right?  A: Yes."); Supplemental

Joseph Aff. (Ohlson Dep. at 250) ("Q: He's the secretary treasurer.  He's not

acting as Brad Slawson, private citizen.  He's acting as Teamsters Local 120,

right?  A: Yes.").)   Evidence has been submitted which demonstrates that

complaints had been made about Plaintiff from union members in his assigned

bargaining units.  (Joseph Aff., Ex. B (Slawson Dep. at 41-42); Ohlson Dep. Ex.

13(C); Slawson Dep. Exs. S, T.)

Plaintiff also admitted that despite his allegations that Defendant treated

him with actual malice and ill-will for over a ten year period, the only charge he

ever brought against the Union was in 2011 in response to his lay-off. (Supp.

Joseph Aff. (Ohlson Dep. at 243-44); Costello Aff. (Ohlson Dep. Ex. 7 (Charge

Document dated June 8, 2011).)

In addition, the record demonstrates that the Local 120 had experienced

financial hardships. Plaintiff admitted that after his lay-off, the number of

business agents dropped from 13 to 12 and that recently hired business agents

were not new positions, but were replacements in North and South Dakota;

positions that Local 120 had to retain. Plaintiff admitted that he was offered

these positions, but that he declined the offers because he did not want to move

to another state. (Joseph Aff., Ex. A (Ohlson Dep. at 175-78.) [1]

Accordingly, the Court finds that Plaintiff has failed to demonstrate the

existence of genuine issues of material fact that Defendant acted with actual

malice when he allegedly interfered with Plaintiff's employment contract.

Summary judgment is thus appropriate as to this claim.

---

[1] Defendant requests that the Court disregard Plaintiff's declaration to the extent it contains statements that are inconsistent with prior deposition testimony. A party may not create a fact question by submitting an affidavit that contradicts his own sworn statements in a deposition. Dotson v. Delta Consol. Indus., Inc., 251 F.3d 780, 781 (8th Cir. 2001). In reviewing the record to determine whether fact issues should prevent summary judgment, and specifically any statements contained in Plaintiff's declaration, the Court has taken into consideration Plaintiff's deposition testimony and disregarded any statement that conflicted with his earlier deposition testimony.

**B.     LMRDA Claim**

In Count III of the Amended Complaint, Plaintiff alleges that Defendant violated his rights to meet and assemble freely with other union members, to express his views, arguments or opinions, and the right not to be disciplined except for nonpayment of dues unless he was served with specific charges, given a reasonable time to prepare his defense and afforded a full and fair hearing, all in violation of 29 U.S.C. § 411 (a)(2) and (5).  (Am. Comp. ¶ 28.)  Plaintiff further alleges that Defendant acted "to deprive Plaintiff of the equal opportunity to be a successful candidate for elected business agent, to deprive other union members of their rights to cast meaningful votes in the next election of elected business agents . . . " (Id. ¶¶  30, 31.)  Plaintiff alleges that Defendant's actions of prohibiting Plaintiff from talking about his discipline with other union members and ordering Plaintiff to stay away from other members was also a violation of the LMRDA.  (Id. ¶ 32.)  Finally, Plaintiff alleges that Defendant acted to undermine the democratic function of the Union.  (Id. ¶ 34.)

Generally, the "statutory rights of association and expression [under LMRDA]. . . are accorded only to union members acting as members and not to union officers acting solely in their official capacity as officers."  Johnson v. Kay,

860 F.2d 529, 536 (2d Cir. 1988) (citing <u>Finnegan v. Leu</u>, 456 U.S. 431, 436-37

(1982)).

> [LMRDA] . . .  guarantee[s] equal voting rights, and rights of speech and
> assembly, to '[e]very member of a labor organization.'  In addition, § 609 of
> the Act [] renders it unlawful for a union or its representatives 'to fine,
> suspend, expel, or otherwise discipline any of its members for exercising
> any right to which he is entitled under the provisions of this Act.'  It is
> readily apparent, both from the  language of these provisions and from the
> legislative history of [the LMRDA], that it was rank-and-file union
> members-not union officers or employees, as such-whom Congress sought
> to protect.

<u>Finnegan</u>, 456 U.S. at 436-37.  "An allegation that an officer has been deprived of

rights as an officer is thus insufficient to establish jurisdiction."  <u>Johnson</u>, 860 F.2d

at 536.  However, "an attack largely focusing upon a union officer may, under

some circumstances, 'directly threaten the freedom of members to speak out,' and

therefore violate the LMRDA, where 'as a result of established union history or

articulated policy' there is 'a deliberate attempt by union officials to suppress

dissent within the union.'"  <u>Id.</u> (internal citations omitted).

Plaintiff has asserted no allegations in the Amended Complaint that even

suggest that Defendant acted pursuant to "an established union history or

articulated policy" to deliberately suppress dissent within the union.  In fact, at

his deposition, Plaintiff testified that he could only speculate as to the

Defendant's motivation for his alleged conduct.  (Joseph Decl. Ex. 1 (Ohlson Dep. 168-70).)

Instead, Plaintiff alleges that Defendant removed him from his position as Business Agent to create the appearance of apathy and incompetence in order to cause Plaintiff to lose the election for office in December 2011, and that such conduct deprived him his rights as a union member to run for election.   In support, Plaintiff has submitted a piece of campaign material that was posted during the election, which accused Plaintiff of being AWOL. (Ohlson Decl. ¶ 34, Ex. S.)   Plaintiff further asserts that Defendant ordered him not to talk with other union members about his "suspension or discharge" and that he was to have nothing to do with other members.  (Ohlson Decl. ¶ 25.)  During his deposition, however, Plaintiff admitted that he did not have any facts to support the claim that Defendant interfered with his union rights to run for office.  (Joseph Decl. Ex. 1 (Ohlson Dep. 168-70).)  Plaintiff further testified that he freely campaigned for the position of President of the Local 120 in 2011 and that the election was fair. (Id. at 73.)

Plaintiff also argues that rendering a man ineligible from seeking union office affects his status as a member of the union and that he therefore can seek

17

relief under the LMRDA, citing to <u>Schonfeld v. Penza</u>, 477 F.2d 899, 904 (2d Cir.

1973). Plaintiff's reliance on <u>Schonfeld</u> is misplaced, however. In <u>Schonfeld</u>, one

of the plaintiffs had been removed from office and declared ineligible to run for

office for five years by the union's district council. <u>Id.</u> at 901. Here, there is no

evidence that Defendant or the Local 120's Board declared Plaintiff ineligible to

run for office. In fact, there is no dispute that Plaintiff was allowed to run in the

2011 election.

Finally, to the extent Plaintiff is alleging that his rights as they relate to the

2011 election were violated, such claim must be brought by the Secretary of

Labor, and is not actionable in a civil action by a union member or former union

officer. <u>See</u> 29 U.S.C. § § 482(a) and 483; <u>Bradley v. Am. Postal Workers' Union</u>,

962 F.2d 800, 802 (8th Cir. 1992) (plaintiff's claim that he was deprived of a fair

election and the right of participation are governed by Title IV of the LMRDA,

which requires a claim to be filed with Secretary of Labor).

Because Plaintiff has failed to demonstrate that fact issues exists as to

whether he is entitled to relief under LMRDA, Defendant has thus demonstrated

that he is entitled to judgment as a matter of law with respect to this claim.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary

Judgment [Doc. No. 32] is **GRANTED**.  This action is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date:   November 29, 2012

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court


Civil No. 11-2104 (MJD/JJG)